Daniel J. Wadley (Utah State Bar No. 10358)
wadleyd@sec.gov
Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Lindsay S. McCarthy (Utah State Bar No. 5216)
mccarthyl@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| PLAINTIFF, | ) **MEMORANDUM IN**<br>) **SUPPORT OF MOTION** |
| v. | ) **FOR CIVIL PENALTIES**<br>) |
| COPPER KING MINING CORP., a Nevada Corporation, MARK D. DOTSON, ALEXANDER LINDALE, LLC, a Minnesota limited liability company, WILFORD R. BLUM, AND STEPHEN G. BENNETT, | )<br>)<br>) Case No: 2:11-cv-00526-SA<br>)<br>) Magistrate Judge: Samuel Alba |
| DEFENDANTS. | )<br>)<br>) |

## INTRODUCTION

Plaintiff Securities and Exchange Commission (the "Commission") submits this memorandum in support of its motion for civil monetary penalties to be awarded against Wilfred R. Blum ("Blum") and Alexander Lindale, LLC ("Alexander Lindale"). Blum and Alexander consented to the Final Judgment without admitting or denying the allegation of the Complaint. Docket #44 at pp. 1–2.Lindale The Commission has alleged that Blum personally and as an

agent of Alexander Lindale violated Section 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") and Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"). On June 28, 2012, the Court entered a judgment permanently enjoining Alexander Lindale and Blum from future violations of the anti-fraud provisions of the federal securities laws and permanently barred Blum from participating in any offering of penny stock. Id. at 2–3. The Court also entered a judgment for disgorgement and prejudgment interest in the amount of $3,848,870.33. Id. at 4.

The Final Judgment as consented to by Blum and Alexander Lindale provides that a civil penalty will be imposed in an amount to be determined by the Court. Id. at 5. To deter future violations of the securities laws, the Commission respectfully requests that the Court order first tier civil money penalties against Blum and Alexander Lindale, pursuant to Section 21(d)(3) of the Exchange Act and Section 20(d) of the Securities Act.

## STATEMENT OF MATERIAL FACTS

1. Blum is the owner of Alexander Lindale, a public relations firm. In early 2008, Blum and Alexander Lindale were retained by Mark D. Dotson ("Dotson"), the President and Chief Executive Officer of Copper King Mining Corp. ("Copper King"), to provide and/or obtain financing for Copper King and to conduct public relations services for the company. Docket #1 at ¶ 4.

2. In an effort to obtain financing for Copper King, Blum and Alexander Lindale sold Copper King stock pursuant to Rule 504 of Regulation D. Id. at ¶ 33. On December 26, 2007, Blum filed a Form D with the Commission indicating that a Rule 504 offering was going to occur under Regulation D. Id. at ¶ 34. At the same time, Blum acquired 15 million

purportedly unrestricted shares from Copper King, valued at $150,000, as payment for Alexander Lindale's services to Copper King.  Id.

3.      In January 2008, Blum, on behalf of Alexander Lindale, signed four additional Subscription Agreements stating his company had purchased 42 million unrestricted shares of Copper King, again purportedly issued under Rule 504 of Regulation D of the Securities Act, for a total of $987,000 in cash or services.  Id.

4.      From March through December 2008, Blum signed ten additional Subscription Agreements with Copper King through which Alexander Lindale allegedly paid for an additional 233 million shares of purportedly unrestricted Copper King stock under Rule 504 for $1,332,400 in cash and services.  Id. at ¶ 36.

5.      From January through August 2009, Alexander Lindale submitted seventeen Subscription Agreements to Copper King and purportedly paid for an additional 676,750,000 unrestricted shares under Rule 504 for $1,583,250 in cash or services.  Id. at ¶ 37.

6.      From September 2009 to February 2010, under the terms of five convertible notes, Alexander Lindale purportedly paid Copper King $3,295,151 in cash or services for 1,095,286,664 unrestricted shares of Copper King stock.  Id.

7.      In each Subscription Agreement Blum represented that Alexander Lindale was buying Copper King stock with investment intent and not with a view to distribute the stock to the public, as required under Rule 504.  Id. at ¶ 39.  However, these claims made in the Subscription Agreements were false.  Id.  Within hours of having Copper King stock issued to Alexander Lindale, Blum immediately began to distribute or resell Copper King stock to individual investors and entities.  Id.

8. Alexander Lindale's accounting and bank records show a total of $12,280,419 in proceeds were raised by Blum's selling of Copper King stock from 2008 through 2010. Id. at ¶ 40. Of this amount, Blum paid Copper King a total of $9,063,567 in cash or services. Id. Alexander Lindale, in turn, kept income totaling $3,291,352 from these sales of Copper King stock. Id. Alexander Lindale's brokerage accounts also show that Blum made an additional $264,495 in proceeds through his sale of Copper King stock. Id.

9. Alexander Lindale and Blum acted as unregistered dealers. Beginning in December 2007 and continuing through January 2010, Alexander Lindale and Blum held themselves out as being able to raise funds to develop Copper King's mine and milling operations by selling the company's stock on a continuous basis into the public market in a principal capacity. Id. at ¶ 46.

10. Alexander Lindale, acting through Blum, acquired a significant inventory of Copper King shares, as evidenced by the multiple Subscription Agreements, and then distributed those shares to the public while creating a public demand for the company's shares through its promotional activities. Id. at ¶ 47.

11. Alexander Lindale and Blum were in the business of providing fund raising services to small public companies and had performed the same or similar fund raising services for other companies, involving the acquisition and sale of stock, as they performed for Copper King. Id. at ¶ 48.

12. During the relevant time period, Alexander Lindale and Blum were not associated with any registered broker or dealer. Id. at ¶ 49.

# ARGUMENT

Blum and Alexander Lindale should be ordered to pay civil monetary penalties. "Disgorgement alone is an insufficient remedy" as "there is little deterrent in a rule that allows a violator to keep the profits if [he] is not detected, and requires only a return of ill-gotten gains if [he] is caught." SEC v. Inorganic Recycling Corp., Fed. Sec. L. Rep. P 92, 269 (S.D.N.Y. 2002). The Securities Act and the Exchange Act permit the Commission to seek civil penalties for each violation of the federal securities laws. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3).  The amount of the penalty "shall be determined by the court in light of the [case's] facts and circumstances." SEC v. Renaissance Capital Mgmt., Inc., No. 9:00-CV-01848-TCP, 2003 WL 23353464, at *5 (E.D.N.Y. Aug. 25, 2003) (quoting 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i)).

Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from similar misconduct in the future.  Accordingly, the factors considered to determine the likelihood of future violations for the purposes of a permanent injunction are also useful in assessing civil penalties.  SEC v. Smart, No. 2:09cv00224 (DAK), 2011 WL 2297659, at *21 (D. Utah June 8, 2011) (citing SEC v. Brethen, No. C–3–90–071, 1992 WL 420867, at *25 (S.D.Ohio Oct. 15, 1992)).  When determining the appropriate civil penalty to impose, the Smart court recognized and examined three salient factors identified originally in SEC v. Youmans: (i) the egregiousness of the violations, (ii) the isolated or repeated nature of the violations, and (iii) the degree of scienter involved.  SEC v. Youmans, 729 F.2d 413, 415 (6th Cir.1984).

A first tier civil monetary penalty is appropriate where the violations do not involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.  See 15 U.S.C. § 77t(d)(2)(A); § 78u(d)(3)(b)(i).  A defendant does not need to act with scienter for the court to impose a first tier penalty.  See, e.g., SEC v. Todd, No. 03CV2230 BEN (WMc),

2007 WL 1574756, at *19 (S.D. Cal. May 30, 2007) (slip. op.). For instance, in SEC v. Gane the court imposed a first tier civil monetary penalty for "minor, technical violations of the securities laws." No. 03-61553-CIV-SEITZ, 2005 WL 90154, at *20 (S.D. Fla. Jan. 4, 2005). Furthermore, in S.E.C. v. Tecumseh Holdings Corporation, the court found that a first tier civil penalty was appropriate because the defendant played a "central role in the sale of . . . unregistered securities and because the conduct at issue continued over a three-year period." 2009 WL 4975263, at *7 (S.D.N.Y. 2009).

The facts in this case show that a first tier civil monetary penalty is appropriate under 15 U.S.C. § 77t(d)(2)(A) and § 78u(d)(3)(b)(i). Alexander Lindale and Blum repeatedly purchased restricted shares of Copper King stock and then immediately sold those shares to the public in violation of 15 U.S.C. § 77e(a) and 77e(c). Similar to the defendant in Tecumseh Holdings, Blum played a central role in the sale of Copper King's unregistered shares to the public over an extended period of time. Alexander Lindale and Blum also violated 15 U.S.C. § 78o(a) when they acted as unregistered dealers. This was more than a "minor, technical violation[] of the securities laws" and first tier civil penalties should be imposed in order to deter similar misconduct in the future.

Examination of the Youmans factors supports this conclusion. The Commission is not alleging that Blum used fraud, deceit, or other manipulations in his activities. Furthermore, the Commission is not alleging that Blum acted with scienter. However, the violations were not isolated. Blum and Alexander Lindale repeatedly violated multiple securities laws over a two year period and should pay civil monetary penalties for these violations as a result.

For violations occurring before March 3, 2009, first tier civil penalties may be imposed at a rate of up to $6,500 per violation for each natural person and up to $65,000 for each other

person, which would include Alexander Lindale.  See 17 C.F.R. § 201.1003.  For violations occurring after March 3, 2009, first tier civil penalties may be imposed at a rate of up to $7,500 per violation for each natural person and up to $75,000 for each other person.  See 17 C.F.R. § 201.1004.  The Commission therefore requests that the Court impose a penalty on Blum of not less than $6,500 and a civil penalty on Alexander Lindale of not less than $65,000 for violations occurring before March 3, 2009.  For violations occurring after this date, the Commission requests that the Court impose a penalty on Blum of not less than $7,500 and a civil penalty on Alexander Lindale of not less than $75,000.

## CONCLUSION

Based on the foregoing, the Commission respectfully requests that the Court grant the Commission's Motion for Civil Penalties against Blum and Alexander Lindale.

Dated July 20, 2012.

Respectfully submitted,

/s/ Daniel J. Wadley
Daniel J. Wadley
Thomas M. Melton
Attorneys for Plaintiff
Securities and Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101