Valeri D. Simpson, Esq. (11466)
Simpson at Law, PLLC
10291 South 1300 East
PMB 107
Sandy, Utah 84094
Telephone: (801) 662-9246
Facsimile: (801) 572-2826

FILED
U.S. DISTRICT COURT

2012 AUG -2 P 2: 22

DISTRICT OF UTAH

BY:_____
     DEPUTY CLERK

*Attorney for Defendants Alexander Lindale, LLC and Wilf Blum*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>COPPER KING MINING CORP., a Nevada Corporation, MARK D. DOTSON, ALEXANDER LINDALE, LLC, a Minnesota Limited Liability Company, WILFORD R. BLUM, and STEPHEN G. BENNETT<br><br>Defendants. | OPPOSITION TO MOTION TO FOR CIVIL PENALTIES<br><br>Case No. 2:11-cv-00526-DN<br><br>Magistrate Judge: Samuel Alba |

Defendants Alexander Lindale, LLC (Alexander Lindale) and Wilfred Blum (erroneously named herein as Wilford Blum) hereinafter (Blum) by and through their counsel of record, respectfully submit this Opposition to Motion for Civil Penalties.

Defendants respectfully request that this Court deny the Motion for Civil Penalties. This motion is based upon the attached Memorandum in Opposition to Motion for Civil Penalties, all pleadings on file herein and any other oral or documentary evidence adduced at the hearing of this motion.

MEMORANDUM IN OPPOSITION TO MOTION FOR CIVIL PENALTIES.

MATERIAL FACTS.

1. Defendants Alexander Lindale and Blum entered into a negotiated Consent Agreement and Final Judgment in this matter by which they neither admitted nor denied the allegations of the Complaint.

2. The Final Judgment was entered by the Court on June 28, 2012, or nearly ten months after Defendants Alexander Lindale and Blum had signed the Consent Agreement in September, 2011. During this period of time, the Commission sought to obtain Consent Judgments from Mark Dotson and Stephen Bennett. The Commission sought to present the Consents to the Washington office as a package for approval, but still has not done so. The Commission would not submit the Consent Judgment of Alexander Lindale and Blum for individual consideration. Thus, the Consent Judgment of these Defendants, completed just two months after service of the Complaint, was substantially delayed by the Commission with serious adverse consequences to these Defendants and other Companies not named in the Complaint or in any way related to Copper King. Adverse news of this suit and continued delay on the part of the Commission caused Blum to resign as President and CEO of another company and saw its stock price decline by 2000 percent.

3. The Commission's delay alone resulted in prejudgment interest greater than the requested civil penalties. The only reason that the parties were able to enter into the Consent Agreement now was to sever the civil penalties issue from additional lengthy Commission review and place them before this Court.

4. As early as Spring 2010, these Defendants fully cooperated with the Commission in every way. Deposition testimony was taken, thousands of documents were produced, and raw

and summarized financial data was produced for the Commission's review. Indeed, all of the data contained in the Complaint in this matter and within the Commission's Motion for Civil Penalties came directly through Defendant's responses to interrogatories and financial spreadsheets prepared by Alexander Lindale. Because of Defendants' cooperation, the Commission did not have to develop the data, they merely excerpted it from the spreadsheets and folded it into the Commission's Complaint.

4. The Final Judgment consented to by Alexander Lindale and Blum provided for $3,848,870.33 in disgorgement and prejudgment interest.

5. The Complaint and the Commission's motion make no allegation of fraud, deceit, scienter, or reckless disregard of securities laws. Indeed, evidence adduced in the investigation of this matter revealed that fiduciaries of Blum and Alexander Lindale had been trading in his account without his knowledge. Despite the SEC's knowledge of the actions of these fiduciaries, the SEC has not prosecuted these individuals.

6. During negotiations between the parties, the Commission stated that it would seek only one civil penalty against Alexander Lindale and Blum. However, the Commission's Memorandum in Support of Civil Penalties seems to request "multiple" violations and requests "civil penalties for these violations." See Commission Memorandum, page 6, second full paragraph.

ARGUMENT.

THE IMPOSITION OF CIVIL PENALTIES HERE IS UNJUST, INEQUITABLE AND CONTRARY TO LAW.

The SEC first acquired the right to impose civil penalties against corporations in the Securities Enforcement Remedies and Penny Stock Reform Act of 1990. Since the Remedies Act was enacted, the SEC has struggled with the question of when it is appropriate to obtain money

3

penalties from Companies. This is because, with regard to entities, members and shareholders end up paying for the acts of unrelated parties. Here, Alexander Lindale has Notes due to other corporate entities. The shareholders of those entities will suffer further with the imposition of an unmeritorious civil penalty to a Company (Alexander Lindale) that owes them a significant debt. This is further magnified when the SEC does not seek enforcement against other culpable actors. See Memorandum Order, *SEC v. Bank of America*, September 14, 2009, 09-civ-6829, Jed S. Rakoff, District Judge.

With regard to Consent Orders and resultant judgments (including civil penalties), the Court is obliged to review the proposal to ascertain whether it is within the bounds of fairness and reasonableness. See *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) and generally *United States v. ITT Continental Baking Co.*, 420 U.S. 223 (1975). This is the standard.

With the exception of *SEC v. Inorganic* and the *Youmans* cases, all other Commission authorities have no precedential value and the Court must disregard them. They are unpublished cases or slip opinions. As the court is well aware, courts publish cases they wish to be used as precedent as notice to the world of what they consider to be the law. The Commission's cases are not binding, not on point and too obscure to be persuasive. The Commission has the burden when it seeks to impose a penalty to show that the law affords it and that there are facts sufficient to support a finding. Neither are present here.

The Commission misstates the effect of the *Youmans* case. That case does not in any way discuss the imposition of civil penalties. The issue in *Youmans* was whether or not securities laws were violated and whether an injunction should issue. The factors cited in the Commission's brief apply only to whether and injunction should issue and not to the imposition of civil penalties. The *Smart* case is unpublished and cannot be relied upon as binding. The

4

Commission bases it whole motion on the *Youmans* case which is inapposite. The idea that the 4 million dollar judgment and injunction do not act as a deterrent when a $6,500 civil penalty will makes reason stare in unbelief. The Consent Order and Final Judgment is all that is ever needed. As such, the Motion should be denied.

While Sections 77 and 78 of Title 15 of the U.S. Code allow the Commission to seek penalties, the Commission must show that they are appropriate under those sections. They have not done so. This court has wide discretion in determining whether the penalties sought should be imposed. See *SEC v. Worldcom, Inc.* 273 F. Supp. 2d 413, 436 (S.D.N.Y. 2003). The Court must consider all facts before it and whether the Commission has met its burden in showing that civil penalties are just, equitable and appropriate.

Even if *SEC v. Renaissance* were precedent, the facts show that Defendants fully cooperated with the Commission and provided the Commission with the very financial data that the Commission used against them. No other defendant has cooperated with the Commission. After the filing of the suit, the Defendants immediately negotiated and signed a Consent Order. The Commission then spent nearly 10 months seeking the Consents of the other named parties in order to save the Commission some review time, all to the expense and detriment of these defendants. Further, this delay would continue, but for these defendants seeking to sever the penalties issue in order for the Final Judgment to be entered. The wasted time by the Commission alone resulted in prejudgment interest greater than the proposed penalty. The nearly 4 million dollar judgment is sufficient in this case. The Commission has not alleged any scienter, deceit or fraud. There is evidence that the violations were contributed to by individuals other than those named in this suit. Accordingly, the facts and circumstances in this case do not support a finding sufficient to impose civil penalties.

CONCLUSION.

Based upon the foregoing, Defendants Alexander Lindale and Blum respectfully request that this Court deny the Commission's Motion for Civil Penalties.

Dated: August 2, 2012

Respectfully submitted,

*[signature]*

Valeri D. Simpson, Esq.
Attorney for Alexander Lindale,
LLC and Wilf Blum

6

CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2011, I filed the Opposition to Motion for Civil Penalties and served the same on the following parties entitled to service by the means indicated below:

By Hand Delivery:

Daniel J. Wadley, Esq.
Thomas M. Melton, Esq.
Securities and Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101

By U.S. Mail Postage Prepaid:

Mark D. Dotson
Ronald C. Barker, Esq.
2870 S. State Street
Salt Lake City, Utah 84115

Copper King Mining
John A. Bryan, Jr.
Chief Executive Officer
The Watley Group, LLC
1801 Century Park East, Suite 1830
Los Angeles, CA 90067

Stephen G. Bennett
125 Daniel Webster Hwy
Merrimack, NH 03054

Bradley S. Simpson