IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>v.<br><br>COPPER KING MINING CORP., a Nevada Corporation, MARK D. DOTSON, ALEXANDER LINDALE, LLC, a Minnesota limited liability company, WILFORD R. BLUM, AND STEPHEN G. BENNETT,<br><br>                  Defendants. | MEMORANDUM DECISION AND ORDER FOR ENTRY OF CIVIL PENALTIES<br><br><br>Case No. 2:11-cv-526-RJS<br><br><br>Judge Robert J. Shelby |

      The Securities and Exchange Commission charged Wilfred Blum and Alexander Lindale, LLC (collectively, "Defendants") with violations of Sections 5(a) and 5(c) of the Securities Act of 1993 and Section 15(a) of the Securities Exchange Act of 1934. At the request of the parties, the court entered a consent judgment against Defendants providing for injunctions, disgorgement, and civil penalties in an amount to be determined by the court (Dkt. No. 44). In its Motion for Entry of Judgment for Civil Penalties against Wilfred Blum and Alexander Lindale (Dkt. No. 45)

the SEC requests the court now fix the amount of civil penalties. The entry of these civil penalties is the only issue remaining before the court.

### I. Factual Background

Blum owns Alexander Lindale, LLC, a Minnesota limited liability public relations firm. Copper King Mining Corporation, a gold, silver, and precious metal mining company from Utah, retained Defendants to provide public relations services. During the course of this work Defendants purchased a substantial number of unrestricted shares of Copper King stock – all together, some 1,076,279,000 shares over the course of two years. From these sales Defendants, though representing that they were purchasing the stock only for investing purposes, instead acted as unregistered dealers and illegally resold the stock to other individuals and entities. Defendants made approximately $12 million in proceeds, paid Copper King approximately $9 million in cash or services, and kept approximately $3 million in income. The SEC brought this action against Defendants and Copper King mining in July 2011, and secured consent judgments against all the defendants by December 2012.

The SEC now seeks entry of first tier civil penalties[1] contemplated in the consent judgment. The SEC seeks a penalty of not less than $7,500 against Blum, and not less than $75,000 against Lindale. *See* 17 C.F.R. § 201.1004. Defendants collectively oppose these amounts, and instead argue that civil penalties are inappropriate in this case.

---

[1] The statutory scheme for civil penalties is tiered, with higher tiers penalizing more egregious violations. For example, violations for "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" are second tier penalties. 15 U.S.C. § 77t(d)(2)(B). First tier civil penalties represent the lowest tier in this framework. 15 U.S.C. § 77t(d)(2)(A).

## II. Legal Framework

The SEC may seek civil penalties once a violation of securities laws has been established. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). "Civil penalties are designed to punish the individual violator and deter future violations of securities laws." *SEC v. Opulentica*, 479 F.Supp.2d 319, 331 (S.D.N.Y. 2007). Whether to enter such penalties, and the amount of the penalties, "shall be determined by the court in light of the facts and circumstances [presented]." 15 U.S.C. § 77t(d)(2)(A).

"General factors that courts look to in imposing these penalties include (1) the egregiousness of the violations at issue, (2) defendant's scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing, (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition." *SEC v. Lybrand,* 281 F.Supp.2d 726, 730 (S.D.N.Y. 2003). The SEC cites a District of Utah decision for the proposition that three of these factors are particularly salient in this court: (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; and (3) the degree of scienter involved. *SEC v. Smart*, 2011 WL 2297659, at *21 (D. Utah June 8, 2011). Other decisions in the District of Utah examine the full list of factors. *See SEC v. Novus Technologies*, *LLC*, 2011 WL 2516938, at *3 (D. Utah June 23, 2011) (examining all seven *Lybrand* factors).

Ultimately, "[w]hile these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a 'discretionary nature' and each case 'has its own

particular facts and circumstances which determine the appropriate penalty to be imposed.'" *Opulentica*, 479 F.Supp.2d at 331 (citing *SEC v. Moran*, 944 F.Supp. 286, 296–97 (S.D.N.Y. 1996)).

### III. Factors in this Case

The SEC argues Defendants repeatedly purchased and sold Copper King shares over an extended period of time, and thus did more than violate a "minor, technical" part of the securities laws. *SEC v. Gane*, 2005 WL 90154, at *20 (S.D. Fla. Jan. 4, 2005) (imposing first tier civil penalty for a minor, technical violation). The SEC contends that disgorgement alone is often an "insufficient remedy" because "there is little deterrent in a rule that allows a violator to keep the profits if [he] is not detected, and requires only a return of ill-gotten gains if [he] is caught." *SEC v. Inorganic Recycling Corp.*, 2002 WL 1968341, at *3 (S.D.N.Y. Aug. 23, 2002). The SEC does not allege that Defendants used fraud, deceit or manipulation, or that Blum acted with scienter. But the SEC also notes that scienter is not required for a first tier penalty to enter. *See, e.g.*, *SEC v. Todd*, 2007 WL 1574756, at *19 (S.D. Cal. May 30, 2007) (slip op.).

Defendants argue imposition of civil penalties here is inappropriate for a multitude of reasons. Defendants assert that the SEC's delay in finalizing the consent judgment, the cooperation of Defendants with the SEC, and the complicity of Defendants' fiduciaries in the fraud without Defendants' knowledge compel the court to deny the motion for civil penalties. Defendants agreed to a consent judgment in this case in September, 2011. Nearly ten months later the SEC entered the judgment with the court. Defendants argue that this delay resulted in adverse consequences to the parties: falling stock prices in Blum's unrelated business ventures, and prejudgment interest that has already accumulated in amounts greater than the requested civil

penalties. Defendants, in effect, argue that these delays should constitute a kind of laches, preventing the SEC from now seeking civil penalties. Defendants also represent that nearly all the data that the SEC used in its Complaint and its Motion for Civil Penalties came from Defendants' responses to interrogatories, financial summaries, and spreadsheets provided to the SEC. These acts of cooperation, Defendants urge, should also weigh against the imposition of civil penalties.

The Defendants further argue that the SEC has not shown that civil penalties here will have a meaningful deterrent effect or are otherwise appropriate, that the SEC cites largely unpublished cases that have no precedential value,[2] and that several of the SEC's cited cases are inapposite because they deal with injunctions and not civil penalties. Defendants argue that the imposition of several thousand dollars in civil penalties will not serve as a meaningful deterrent in this case where the consent judgments entered against the Defendants already impose nearly $4 million dollars in disgorgement and prejudgment interest penalties, as well as issuance of an injunction to prevent further securities violations.

Having carefully considered the parties' arguments, the facts and circumstances of the case, and after conducting a discretionary inquiry guided by the factors commonly examined for civil penalties, the court concludes that on the balance civil penalties are appropriate here. The following factors are most relevant to the court's determination.

### A. The Egregiousness of the Defendants' Conduct

---

[2] While the court cannot cite unpublished cases as controlling law, these opinions nevertheless can be persuasive in this court. DUCivR 7-2(a) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

This factor weighs strongly in favor of civil penalties.  Here, Defendants' conduct rises to an egregious level.  Defendants unlawfully traded over a billion shares of penny stock.  Investors who purchased the stock likely will face substantial losses on their investments, especially given Copper King's involvement in this lawsuit.  Blum admits that his conduct has resulted in the devaluation of the stock of his unrelated businesses, and it is likely that Defendants' scheme carried similar negative reputational risks and consequent market effects for other investors.  Moreover, Defendants allegedly took steps to generate false publicity about the stock, using billboards and celebrity endorsements to artificially increase its sale value.  These acts all are evidence of the egregious nature of Defendants' conduct here.  In short, "deceit and market manipulation" that resulted in losses to individual investors.  *Lybrand*, 281 F.Supp.2d, at 731.

    **B.**    **Whether the Defendants' Conduct Created Substantial Losses or the Risk of Substantial Losses to Other Persons**

This factor weighs in favor of civil penalties.  Defendants participated in an unlawful scheme to sell unrestricted Copper King shares to investors.  This created a risk to any investor or institutional entity buying these shares.  There is little in the record about the innocence of downstream investors, or the extent of the losses incurred by those investors.  But the unlawful sales themselves created a risk of substantial downstream loss, especially given the misrepresentations alleged in this case.

    **C.**    **Whether the Defendants' Conduct was Isolated or Recurrent**

Defendants conduct was recurrent, and as such this factor weighs strongly in favor of civil penalties.  The SEC alleges that Defendants participated in at least 32 different Subscription Agreements between December 2007 and August 2009.  From September 2009 to February 2010

Defendants acquired over a billion unrestricted shares of Copper King stock through the terms of five convertible notes.  Throughout this period of multiple acquisitions of unrestricted stock, Defendants sold the stock illegally to individual investors and entities and acted as unregistered dealers.  Importantly, Defendants accelerated their purchases through 2009.  "The actions of these [Defendants] involved a multitude of improper securities transactions that occurred over several months – they violated the securities laws repeatedly and with regularity."  *Lybrand*, 281 F.Supp.2d at 731.  This regularity, and the acceleration of stock purchases by Defendants, makes civil penalties appropriate here as a disincentive to such speculation.

> D. **Whether the Penalty Should be Reduced Due to the Defendants' Demonstrated Current and Future Financial Condition**

Defendants' current financial condition does not make civil penalties inappropriate here.  At the hearing on the SEC's motion, defense counsel for Blum represented her belief that Blum currently has no assets, no home, and no car.  However, counsel also represented that Blum currently owns a business diving for precious artifacts off the coast of the Dominican Republic.  The court is skeptical that Blum is destitute to the point that he could not pay back civil penalties if they were entered against him.  Moreover, the Defendants chose not to place before the court any competent evidence of Defendants' current financial condition that might weigh against the issuance of civil penalties here.

> E. **Defendants' Lack of Cooperation and Honesty with Authorities, If Any**

The Defendants argue that their cooperation formed a central part of the SEC's investigation.  The SEC argues that the cooperation of the Defendants, while not unappreciated, does not inoculate them from civil penalties.  The SEC represents that they have already declined

to bring the full number of penalties they could potentially seek, and that the litigation itself was well-founded to begin with, notwithstanding the Defendants' help. "Such cooperation is important to the investigation, prosecution, and punishment of frauds of this kind, and should be rewarded." *Opulentica*, 479 F.Supp.2d at 332 (citations and quotations omitted). Such cooperation can demonstrate a "meaningful contrition." *Id.* Here, Defendants did meaningfully contribute data and information to the SEC which formed a core part of the SEC's case. While these disclosures did come in the context of a coercive SEC investigation, the court should incentivize this behavior, and as such this factor weighs against the imposition of civil penalties.

### F.  Defendants' Failure to Admit to Their Wrongdoing

This factor weighs slightly in favor of civil penalties, and undercuts Defendants' cooperation. "Instead of taking responsibility for their actions, they blame others . . . while downplaying their own involvement. This lack of accountability is an additional factor warranting a civil penalty." *Lybrand*, 281 F.Supp.2d at 731. Here, Defendants attempt to shift the blame onto their fiduciaries, arguing that these fiduciaries were also largely responsible for the illegal sales. This blame-shifting in the face of an SEC investigation shows exactly the kind of failure to admit wrongdoing that courts are often concerned with. But it should be noted that this factor's weight is not overwhelming here: like some other factors, it is hard for the court to meaningfully analyze Defendants' motivations for admitting to wrongs on such a limited record.

### G.  Effectiveness of Civil Penalty

Finally, Defendants argue that civil penalties are inappropriate here because of the substantial disgorgement already in place. This argument is unconvincing. The imposition of civil penalties here is unconnected to disgorgement: disgorgement prevents a windfall relative to

past illegal gains, while a civil penalty functions as a deterrent focused on future bad behavior. "Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud." *SEC v. Coates*, 137 F.Supp.2d 413, 429 (S.D.N.Y. 2001) (quoting H.R.Rep. No. 101–616 (1990)). The relative magnitudes of these two sanctions is analytically irrelevant because their end goals differ.

### IV. Conclusion

On balance, these facts and circumstances warrant civil penalties. The egregious nature of Defendants' conduct, the financial risks it involved, and the repetitive and recurrent nature of the violations weigh more heavily than the Defendants' cooperation with the SEC. The court GRANTS the SEC's Motion for Entry of Judgment for Civil Penalties against Wilfred Blum and Alexander Lindale (Dkt. No. 45).

IT IS ORDERED, ADJUDGED, AND DECREED that Blum shall pay a civil penalty in the amount of $7,500 and Alexander Lindale shall pay a civil penalty in the amount of $ 75,000, pursuant to Section 21(d)(3) of the Exchange Act of 1934 and Section 20(d) of the Securities Act of 1933. Defendants shall satisfy these obligations by paying these amounts to the Securities and Exchange Commission within 14 days after entry of this Final Judgment, or by such date as the SEC may agree to. Defendants may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank

cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

>   Enterprise Services Center
>   Accounts Receivable Branch
>   6500 South MacArthur Boulevard
>   Oklahoma City, OK 73169

Any such payment shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Wilfred R. Blum as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment. Defendants shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendants. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.  Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.  There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.  The Clerk is further directed to close this case.

SO ORDERED this 29th day of July, 2013.

>   BY THE COURT:
>
>   _____
>   ROBERT J. SHELBY
>   United States District Judge